## CONTINUATION OF APPLICATION FOR A SEARCH WARRANT

I, Andrew Holt, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and have been so employed for over 14 years. In that capacity, I have participated in hundreds of investigations involving violations of federal firearm and narcotics laws, resulting in the arrest and conviction of criminal defendants and the seizure of firearms and narcotics.

2. I have previously been the affiant for many federal search warrants and have assisted other state and local agencies as well as Assistant United States Attorneys in the preparation of affidavits for search warrants. I have directed and participated in the execution of many search warrants relative to investigations of Titles 18 and 21 of the United States Code. Evidence seized pursuant to these search warrants includes, but is not limited to, firearms, ammunition, controlled substances, drug proceeds, cellular telephones, computers, documents and records pertaining to the possession and distribution of firearms and controlled substances and proceeds derived from the sale of firearms and controlled substances.

3. This continuation is submitted in support of a warrant to search the property described in **Attachment A** (the "DEVICE") for the items and evidence described in **Attachment B**.

4. The facts in this affidavit come from my personal observations, knowledge obtained during my participation in this investigation from other individuals, my review of documents and other records relating to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information obtained

through my training and experience. This affidavit is intended only to show that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. The U.S. Attorney's Office for the Western District of Michigan (the "U.S. Attorney's Office") has advised me that 18 U.S.C. § 922(g)(1) prohibits any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year from possessing, in or affecting interstate commerce, any firearm.

6. The U.S. Attorney's Office has advised me that the elements for possessing a firearm as a convicted felon are: (1) the defendant has been convicted of a crime punishable by imprisonment for more than one year; (2) the defendant knowingly possessed the firearm; (3) the defendant knew he was a felon at the time of the offense; and (4) the firearm crossed a state line prior to the offense. The U.S. Attorney's Office has further advised me that possession, for purposes of 18 U.S.C. § 922(g)(1), includes both actual and constructive possession.

7. This investigation has established probable cause that on or about February 10, 2022 and February 22, 2022, in the course of selling and arranging for sales of firearms, ERNEST JAMES JONES, JR., a convicted felon, possessed firearms that had traveled in or affected interstate commerce in violation of 18 U.S.C. § 922(g)(1). Indeed, on March 30, 2022, a grand jury returned an indictment charging JONES with two counts of unlawful possession of a firearm by a convicted felon on those dates.

## JONES IS A CONVICTED FELON

8. On or about December 3, 2019, JONES was convicted of carrying a concealed weapon ("CCW") in violation of MICH. COMP. LAWS § 750.227, a felony punishable by up to five years' incarceration. JONES's conviction was deferred under the Holmes Youthful Trainee Act

("HYTA") until on or about December 1, 2021, when JONES's HYTA status was revoked based on probation violations. On or about December 1, 2021, JONES was sentenced to 93 days in jail.

### THERE IS PROBABLE CAUSE THAT JONES ILLEGALLY POSSESSED FIREARMS ON OR ABOUT FEBRUARY 10, 2022 AND FEBRUARY 22, 2022

9. On or about November 16, 2021, I was involved in conducting the controlled purchase of a firearm in connection with a separate investigation. On or about that date, an ATF confidential informant (the "CI") and an undercover officer were parked at the Steel Cat Bar, 640 Bridge Street NW in Grand Rapids, Michigan. The CI had previously arranged to purchase a firearm from another individual ("Person 1") at that location.

10. While the CI and undercover officer were waiting for Person 1, two individuals approached the vehicle and sold the subject firearm—a Glock 9mm pistol that had been reported stolen by the Grandville Police Department—to the CI. During the transaction, which was recorded in audio and video, an individual can be heard telling the CI to get rid of this "middleman shit" and to contact him directly on Facebook. The individual identified himself as "Ernest Jones" and spelled his name for the CI.

11. On or about January 21, 2022, JONES was released from jail following the HYTA revocation for his December 2019 CCW conviction. That day, the CI received a call from an unfamiliar phone number. The caller, a male, identified himself as JONES, said he was recently released from jail, and asked if the CI was interested in purchasing a firearm.

12. On or about February 8 and February 9, 2022, an individual, a male, contacted the CI using a cellular phone and offered several firearms for sale, including an FN Herstal pistol for $1,400.00. On or about February 10, 2022, the same individual informed the CI that he was waiting on the source of the pistol and to meet at Joe's Party Store at 110 Hall Street SW in Grand Rapids, Michigan.

13. On or about February 10, 2022, the CI and an undercover officer arrived at Joe's Party Store in an undercover vehicle. An individual entered the undercover vehicle and sold the CI an FN Herstal pistol for $1,400.00. The transaction was recorded in audio and video, a screenshot of which is provided below. Based on my experience in this investigation, and my review of JONES's picture and other evidence in this case, I have identified the individual depicted in the picture below as JONES.



14. The FN Herstal pistol described in Paragraph 13, above, was manufactured in Belgium and imported through South Carolina.

15. On or about February 21, 2022, the CI advised me that JONES contacted him/her via cellular phone about a Glock 43 and a Smith & Wesson M&P pistol for sale. After exchanging phone calls and text messages with the individual whom the CI identified as JONES, the CI was directed to first drive to 413 Hall Street in Grand Rapids, Michigan, to purchase the Smith & Wesson M&P pistol. The CI arrived at that address with an undercover officer in an undercover vehicle.

16. When the CI and undercover officer arrived at 413 Hall Street on or about February 21 2022, an individual entered the undercover vehicle and handed the CI a Smith & Wesson M&P

4

pistol. The transaction was recorded in audio and video, a screenshot of which is provided below. Based on my experience in this investigation, and my review of JONES's picture and other evidence in this case, I have identified the individual depicted in the picture below as JONES. JONES can be heard in the video saying, about the gun, "It's bigger than I thought it was."

 

17. The Smith & Wesson M&P pistol described in Paragraph 16, above, was manufactured in Massachusetts using a frame that was manufactured in Nebraska.

18. During the same encounter on or about February 22, 2022, JONES stayed in the undercover vehicle and directed the CI to drive to 4 Brothers Chicken and Fish at 1975 Madison Avenue SE in Grand Rapids, Michigan. There, JONES left the undercover vehicle, telling the CI, "Okay, I'm gonna go grab it real quick." While JONES was outside the undercover vehicle, he left his phone on the passenger seat of the undercover vehicle. JONES's phone was unlocked and open to a messaging application showing an exchange between JONES and an unidentified individual. The message, as depicted below, read, "Here."



19. During the same encounter on or about February 22, 2022, JONES returned to the undercover vehicle and the CI drove to another location. At that location, JONES handed the CI a Glock 43 pistol and took cash from the CI. As the CI checked the Glock 43 pistol, JONES said, "For the [Smith & Wesson] M&P you gave me $1,150, right?" The transaction was recorded in audio and video, a screenshot of which is provided below. Based on my experience in this investigation, and my review of JONES's picture and other evidence in this case, I have identified the individual depicted in the picture below as JONES:

 

20. The Glock 43 pistol described in Paragraph 19, above, was manufactured in Austria and imported through Georgia.

## THERE IS PROBABLE CAUSE THAT JONES
## ILLEGALLY POSSESSED A FIREARM ON OR ABOUT APRIL 13, 2022

21. On or about April 13, 2022, after the grand jury returned JONES's indictment, the CI informed me that an individual using cellular phone number (616) 404-2899—whom the CI identified as JONES—offered the CI several firearms for sale, including a Ruger P90 pistol for $1,100.00. The individual using the number (616) 404-2899 also text-messaged the CI a picture of an AR-style pistol that the individual was offering for $1,650.00:



22. That same day, on or about April 13, 2022, the CI and the individual using cellular phone number (616) 404-2899—a contact saved in the CI's phone as "E"—communicated by phone, including through the text messages provided below. After first considering a meeting at 746 Dorchester Ave. SW in Grand Rapids, Michigan, the CI agreed to meet at the Oxford Food Center, 817 Oxford Street SW, Grand Rapids, Michigan. The CI arrived at the Oxford Food Center as an arrest team staged in the area with a federal arrest warrant for JONES.

7



23. When the CI parked the undercover vehicle, an individual—later identified as JONES upon arrest—entered the undercover vehicle while on his phone. JONES continued to use his phone as he put on tan gloves, received a firearm (later identified as a Ruger P90 .45 caliber pistol) from an unidentified individual in the back seat, handed the Ruger P90 pistol to the CI, and took $1,100.00 in prerecorded ATF funds from the CI. The transaction was recorded in audio and video, screenshots of which are provided below.

 

8

24.     After the transaction described in Paragraph 23, above, I arrested JONES on the outstanding federal arrest warrant. I searched JONES incident to that arrest, and seized the DEVICE described in **Attachment A**. I believe that the DEVICE is the same phone depicted in Paragraph 18, above: a white iPhone with the upper left corner exposed and nearly identical crack patterns.

25.     ATF is currently in possession of the DEVICE described in **Attachment A**.

## REQUEST TO SEARCH THE DEVICE

26.     As discussed in Paragraphs 9 through 23, above, there is probable cause that JONES personally sold firearms to the CI based on purchases that were arranged, with JONES, through phone calls and text messages.

27.     As discussed in Paragraphs 18 and 19, above, there is probable cause that JONES used the DEVICE to contact the source of a firearm through a messaging application on the DEVICE.

28.     There is also probable cause that JONES used the DEVICE to communicate with the CI regarding an illegal firearm sale on April 13, 2022, the date I seized the DEVICE. There is probable cause, therefore, that the DEVICE contains evidence of the unlawful possession of a firearm by a convicted felon violation of 18 U.S.C. § 922(g)(1).

29.     Based on my training and experience, I also know that because individuals involved in criminal activity often use cellular phones to communicate with others in the course of planning, executing, and concealing crimes, portable electronic devices such as cellular phones or smartphones may be important to criminal investigations in two significant respects. First, the described items themselves may be instruments, fruits, or evidence of a crime. Second, the described items may have been used to collect and store information, in the form of electronic

data, about a crime. This electronic data includes contact lists and details, call logs, voicemails, location history, notes, stored communications (including unopened, read, sent, and deleted text messages, photographs, and videos).

30.     I know that cellular telephones can store the content described in Paragraph 29, above, even if a new cellular telephone is acquired and the phone number is transferred to the new cellular telephone. I also know that, although a person may change cellular telephones, their new telephones may have the capability of synchronizing with systems that store data remotely from the telephone. When a user synchronizes their telephone with the remote system, data stored on the remote system is accessible and sometimes downloaded and stored on the telephone. As a result, it may be possible for evidence dating back years to be stored on the device.

31.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

32.     <u>Forensic Evidence</u>. As further described in **Attachment B**, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the DEVICE was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the DEVICE because:

   a.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on an electronic device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

33. <u>Nature of Examination</u>. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

34. Based on the foregoing, there is probable cause to believe that the DEVICE will contain evidence of the unlawful possession of firearms by a convicted felon in violation of 18

U.S.C. § 922(g)(1), including, but not limited to, contacts and contact lists, text messages and other communications, voicemails, photographs, call histories, contact lists and details, location histories, photographs, and videos.

## CONCLUSION

35.     I respectfully submit that there is probable cause to believe that evidence of criminal conduct in violation of 18 U.S.C. § 922(g)(1) will be found on the DEVICE described in **Attachment A**, and request that a warrant be issued authorizing the search of that DEVICE for the search and seizure of items listed in **Attachment B**.